UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLACE,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN STEWART COMPANY, et al.,<br><br>    Defendants. | Case No. 25-cv-04433-WHO<br><br>**ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 7, 13, 17, 21, 22 |

Pro se plaintiff David Wallace has filed a request for a temporary restraining order ("TRO") to enjoin defendants John Stewart Company ("JSC") (a housing management company) and Redwood Gardens (a subsidized senior housing facility managed by JSC) from filling any one-bedroom apartments at Redwood Gardens during the pendency of this lawsuit. He contends that he was wrongfully removed from the waitlist for such one-bedroom units. He fears that absent this relief, the one-bedroom units to which he believes he is entitled will go to someone else. He also asks that I order the defendants to produce various documents related to his past housing applications, which he believes have been wrongfully delayed. He has not shown a likelihood of success on the merits or irreparable injury. His request for a TRO is DENIED.

## BACKGROUND

Wallace states that he is a "disabled tenant-applicant who has submitted multiple complete housing applications to Defendants over the last six years." TRO Request [Dkt. No. 21] at ECF p. 3; *see also* First Amended Complaint ("FAC") [Dkt. No. 9] at ECF pp. 7-10. He claims that despite his "fulfilling all checklist requirements and timelines, Defendants have failed to process his application in a timely manner and how insist he start over for a third time." TRO Request at ECF p. 3. He says that this "disproportionately burden[s]" him as a disabled individual. *Id.*

Wallace alleges that the defendants wrongfully removed him from a waitlist for a one-bedroom apartment at Redwood Gardens, in violation of the Fair Housing Act ("FHA"), "Section 504 of the Rehabilitation Act," and the Americans with Disabilities Act ("ADA"). *Id.* at ECF pp. 3-4. He argues that a TRO is necessary for several reasons: (1) "Defendants are actively filling 1-bedroom units" despite this action challenging their alleged removal of Wallace from "1-bedroom lottery waitlist"; (2) the defendants "refus[e]" to provide Wallace with a "copy of his lottery card" or "confirm his waitlist position" or "provide a redacted waitlist or tenant selection log[]"; (3) the defendants "acknowledg[e]" that Wallace was "removed from the list" yet "fail[] to justify or correct that removal"; and (4) Wallace "need[s]…a 1-bedroom as a reasonable accommodation due to his disability." TRO Request [Dkt. No. 21] at pp. 1-2.[1]

After reviewing Wallace's (numerous) requests for emergency relief, as well as his Complaint and various declarations, I issued a scheduling order, calling for a response to Wallace's requests for expedited relief and setting a hearing for the TRO request on August 13, 2025. Dkt. No. 27. JSC submitted a response and a supporting declaration. Dkt. Nos. 29, 30. I held a hearing on August 13, 2025, at which Wallace and counsel for JSC appeared.[2] In its

---

[1] Wallace's case was originally before Magistrate Judge Lisa J. Cisneros. Judge Cisneros reviewed Wallace's application for leave to file *in forma pauperis*, screened the complaint, deemed it insufficient, and ordered that he file a new complaint. *See* Dkt. No. 6. She also denied the first request for emergency relief that Wallace filed (construing it as a TRO request), explaining that there was no indication that Wallace had provided notice to the defendants or that notice was not possible for some reason. Dkt. No. 8. He then filed the First Amended Complaint ("FAC"). Dkt. No. 9. He also filed another TRO request, reiterating the same request for relief. Judge Cisneros held a hearing on July 21, 2025, but declined to consider the TRO *ex parte* because Wallace still had not served the TRO request on the defendants. Dkt. No. 18. Wallace ultimately did serve the TRO request on the defendants; five days later, he filed a third TRO request, also seeking the same relief, along with a motion to permit service by email on account of his disability. Dkt. Nos. 21, 22. At that point, the case was reassigned to me.

[2] Prior to the August 13 hearing, Wallace submitted several *ex parte* requests to the court for various ADA accommodations. In an effort to provide those accommodations, on August 12, 2025, I provided the parties with a list of "guiding questions" for Wallace that he could consider at his own pace prior to the hearing; the guiding questions asked Wallace to respond to JSC's arguments in opposition to his TRO request. Wallace submitted written responses, also *ex parte*, about an hour in advance of the hearing; he indicated that he wanted those responses to be accepted by the court as his response to the defendants' arguments in opposition. Wallace also submitted *ex parte* a number of exhibits, including medical records containing sensitive information about his conditions, and email correspondence between his former Bay Area Legal Aid attorney and the defendants. Counsel for JSC was given a brief opportunity to review those responses immediately before the hearing.

1    response and at the hearing, JSC denied that Wallace was ever on a waitlist for a one-bedroom
2    apartment and denied that he ever won a "lottery" for a one-bedroom apartment. *See*
3    Opposition/Response ("Oppo.") [Dkt. No. 29]; *see also* Declaration of Susanne Wilson ISO Oppo.
4    ("Wilson Decl.") ¶¶ 3, 8. JSC represents that Wallace's application for a studio apartment, which
5    was the only type available to him when he applied, is still incomplete. It contends that the delay
6    in processing his application is attributable to his failure to provide essential information. *See*
7    Oppo.; *see also* Wilson Decl. ¶ 10.

## DISCUSSION

The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction may issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

Wallace's circumstances do not warrant issuance of the extraordinary emergency relief he seeks. He has not shown that it is likely he will prevail on the merits of his FHA or ADA claims. He has not provided support other than his own statements for his claim that defendants' failure to place him in a one-bedroom apartment is attributable to discrimination or otherwise unfair

United States District Court
Northern District of California

1    treatment, as opposed to what JSC contends is a function of his incomplete housing application
2    and a lack of available one-bedroom units at Redwood Gardens.  Wallace claims without proof
3    that he was on a waitlist for a one-bedroom apartment at some point.  JSC states that he was only
4    ever on the waitlist for a studio apartment.  Wilson Decl. ¶ 8.  Its position is that while Wallace
5    was apparently told that he could be moved into a one-bedroom apartment eventually, if he was
6    first placed in a studio apartment, his incomplete application has prevented that first step from
7    happening.  *See* Oppo. 3; Wilson Decl. ¶ 10.[3]  On this scanty record, the only thing that is clearly
8    established is that Wallace has not met his burden to show a likelihood of success.

9    Wallace has also not shown that he faces immediate or irreparable harm absent the
10   requested injunction.  He rejected my suggestion, offered at the August 13 hearing, to meet with
11   JSC's counsel and a JSC employee with authority to identify any missing information for his
12   application, which would presumably lead to his admission into a studio unit with the prospect of
13   eventually moving into a one-bedroom apartment, as JSC has indicated.  Given his current,
14   apparently incomplete application, I have no way to know if he even qualifies for an apartment,
15   one-bedroom or otherwise.  And the defendants have represented that a recent fire displaced 18
16   households at Redwood Gardens and that there are no available one-bedroom units, which is
17   another hurdle to the relief he seeks.  *Id.,* ¶ 14.

18   On this record, Wallace's TRO request is DENIED.  Wallace can commence discovery
19   now in accordance with the Federal Rules of Civil Procedure.  It would appear, substantively and
20   pragmatically, that he should focus on completing his housing application so that a determination
21   can be made on it, even if he wishes to pursue litigation on past events.  Regardless, as I indicated
22   at the hearing, given the litigation Wallace may not communicate directly with JSC or Redwood
23   Gardens about this case: he should communicate solely with defense counsel, attorney Craig

---

[3] While Wallace says that he won a lottery for a one-bedroom apartment, no evidence supports this and the defendants refute it.  In its opposition, JSC states that "at no point was Wallace on a waitlist for a one-bedroom apartment at Redwood Gardens," nor did he ever win a "lottery" for a one-bedroom apartment.  Opposition/Response [Dkt. No. 29] at 4-5; Wilson Decl. ¶¶ 3, 10.  At the August 13 hearing, Wallace claimed to have a "2017 winning lottery card," which he believes is located in a storage unit somewhere.  JSC denies that such a card exists.

Rolfe, unless Mr. Rolfe in writing indicates that he may communicate with any of defendants' employees. Wallace may find helpful the Court's Pro Se Handbook, linked here: http://cand.uscourts.gov/pro-se-handbook/.

**IT IS SO ORDERED.**

Dated: August 15, 2025

William H. Orrick
United States District Judge