United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLACE,<br>Plaintiff,<br>v.<br>JOHN STEWART COMPANY, et al.,<br>Defendants. | Case No. 25-cv-04433-WHO<br><br>**ORDER ON FOURTH MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 97, 99, 100 |

**A principal task of a federal judge is case management. My previous efforts in this case have not succeeded, and this matter requires a hard re-set. The parties, and particularly plaintiff David Wallace, are advised to pay strict attention to this Order.**

On May 12, 2026, I granted defendant The John Stewart Company's ("JSC") motion to dismiss *pro se* plaintiff John Wallace's ("Wallace") Third Amended Complaint. Wallace then filed a Fourth Amended Complaint ("FAC") that purports to cure the identified defects, and JSC once again moves to dismiss. A screening of Wallace's complaint under 28 U.S.C. § 1915 shows that the FAC is deficient and that JSC's motion to dismiss is warranted. The FAC does not plausibly allege violations of the Americans with Disabilities Act or the Fair Housing Act. It includes claims that are untimely and defendants who have previously been dismissed. It seeks to extend liability to individuals who are impermissibly added to the FAC. Considering both Wallace's *pro se* status and the numerous times he has been provided leave to amend, I will grant leave only one more time, and only if he follows the directions in this Order, which explains the FAC's deficiencies and the claims and defendants that Wallace must focus on should he wish to continue litigating his case.

## BACKGROUND

### 1. Factual Background

The following facts, construed in favor of Wallace, are presented in the FAC. Wallace is a "73-year-old individual with disabilities including PTSD, ADD, Schizotypal Personality Disorder, and other cognitive and neurological impairments." FAC [Dkt. No. 90] ¶ 4. He applied for housing at Redwood Gardens ("RG") in 2019. *Id.* ¶ 38. After completing his application, he alleges that Redwood Gardens "ceased meaningful communication regarding [his] application status." *Id.* It was not until July 8, 2020, that Wallace was notified that he was eligible for studio and one-bedroom units and was placed on a "high priority waiting list." *Id.* Around June 2023, however, Redwood Gardens "disqualified [him] based on projected income from approximately three weeks of temporary employment that had already ended in May." *Id.* He later disputed that income determination in writing and filed an appeal. *Id.*

Wallace asserts that defendants also "obstructed" his efforts to restore his status on the housing waiting list. *Id.* ¶ 50. On February 7, 2025, Wallace reapplied for housing at Redwood Gardens. *Id.* ¶ 62. He alleges that management "reviewed the application for completeness . . . and [noted] that the application clearly indicated Plaintiff's selection of a one-bedroom unit on the front page." *Id.* Later, JSC staff indicated that "no one-bedroom units were available, and that [Wallace] had not been placed on the one-bedroom waiting list despite prior representations to the contrary." *Id.* ¶ 96. He finally alleges that he "repeatedly requested proper notification and reasonable accommodation due to his disability and communication limitations," which "defendants"[1] failed to adhere to. *Id.* ¶ 41.

### 2. Procedural History

Wallace originally filed his complaint against JSC and RG on May 23, 2025. *See* Complaint ("Compl.") [Dkt. No. 1]. On July 1, 2025, the Hon. Lisa Cisneros granted Wallace's

[1] Wallace notes that "defendants" refer to the "collective conduct of the corporate Defendants to the extent they acted jointly or exercised shared authority over housing eligibility determinations, waiting list administration, application processing, and accommodation requests." FAC ¶ 42. This definition does not identify which corporate defendant did what that would make them liable for any of Wallace's claims.

application to proceed *in forma pauperis* but found that Wallace had not alleged enough facts to survive screening under 28 U.S.C. § 1915(e)(2)(B). *See* Order Granting Application to Proceed In Forma Pauperis; Screening Complaint [Dkt. No. 2]. Judge Cisneros gave Wallace until July 29, 2025, to file an amended complaint. *Id.* at 4.

Wallace filed his First Amended Complaint ("AC") on July 9, 2025, again naming JSC and RG as the defendants. *See* FAC [Dkt. No. 9]. Judge Cisneros screened the AC on July 10, 2025, and found "no basis for dismissal of the case under 28 U.S.C. § 1915(e)(2) . . . at this time." Order Screening Case Under 28 U.S.C. § 1915(e)(2) [Dkt. No. 11]. Summons were issued to JSC and RC the following day. *See* Summons [Dkt. No. 12].

This case was reassigned to me on July 31, 2025. *See* Order Reassigning Case [Dkt. No. 26]. Prior to reassignment, Wallace had filed numerous requests for a temporary restraining order and other expedited relief. *See* Scheduling Order and Requiring Service [Dkt. No. 27]. I denied Wallace's request for expedited relief on August 15, 2025. *See* Order Denying Motion for a Temporary Restraining Order [Dkt. No. 34].

On August 28, 2025, Wallace filed a motion seeking leave to file a Second Amended Complaint ("SAC"). *See* Plaintiff's Motion for Extension of Time [Dkt. No. 38]. I noted in a subsequent order on August 30, 2025, that Wallace had already exhausted his right to amend his pleading as a matter of course under Federal Rule 15(a), and that he accordingly would need the opposing party's written consent or the court's leave to file the SAC. *See* Order Addressing Motions re: Amended Complaint [Dkt. No. 39] at 1–2.

Wallace filed an administrative motion for leave to file the SAC on September 23, 2025. *See* Plaintiff's Motion for Leave to File SAC [Dkt. No. 48]. I denied Wallace's motion during the parties' case management conference that same day, noting that while the "body of the [SAC] is clear enough," "its format does not comply with the requirements of Federal Rule of Civil Procedure . . . which are necessary so that defendants can file a coherent response." *See* Civil Minutes [Dkt. No. 49] at 2. I ordered Wallace to "amend his complaint in compliance with Rule 10, and to file it as a Third Amended Complaint." *Id.*

Wallace filed his Third Amended Complaint ("TAC") on October 14, 2025. *See* Plaintiff's

TAC [Dkt. No. 54]. The TAC included numerous defendants[2] that were not previously identified in the previous complaints. *See id.* at 1. During my January 21, 2026 case management conference with the parties, I noted that I would reserve determination of the plausibility of the TAC for future motions. *See* Civil Minutes Order ("Jan. 21 Minute Order") [Dkt. No. 66]. But I recognized that Wallace listed "a number of individuals as potential defendants, but only four of them [were] described in the Complaint as having done something specific that is possibly relevant." *Id.* at 2. I therefore dismissed those individuals "named in the Complaint but not identified as having done something specific." *Id.*

JSC filed a motion to dismiss the TAC on February 9, 2026. *See* Defendant JSC's Motion to Dismiss Plaintiff's TAC [Dkt. No. 70]. Wallace then filed a Fourth Amended Complaint ("FAC") on March 27, 2026 and requested to utilize the FAC as his operative complaint. *See* Amended Complaint Fourth [Dkt. No. 73]; Fourth Motion to Amend/Correct [Dkt. No. 75]. The FAC included allegations against those individual defendants I dismissed on January 21, 2026. *See id.* I granted JSC's motion to dismiss the TAC on May 12, 2026. *See* Amended Order Resolving Pending Motions [Dkt. No. 89]. I granted leave to amend for all of Wallace's claims, with the exception of Count III (Retaliation and Interference), which I dismissed without leave. *Id.* at 10.

Wallace filed a new FAC on May 26, 2026, which is the subject of this Order. *See* FAC [Dkt. No. 90]. The FAC raises allegations against each individual defendant, despite my previous orders limiting defendants to JSC, RG, and those individual defendants identified by Wallace about whom he made specific allegations in the TAC (Wilson, Newell, Wood). JSC filed a motion to dismiss the FAC on June 12, 2026. *See* JSC's Notice of Motion to Dismiss FAC ("Mot.") [Dkt. No. 97]. Wallace filed his opposition on June 26, 2026. *See* Opposition to Motion to Dismiss FAC ("Oppo.") [Dkt. No. 99]. JSC filed its response on July 2, 2026. *See* Reply in

---

[2] New defendants added to the TAC included CSI Support & Development; Foundation Housing; Pennant Housing; Susanna Wilson; Jennifer Wood; Kennetha Newell; Armando Garcia; Anita Michaels; Lamonica Nelson; Ms. Kash (last name unknown); Josephine Cobarrubias; Dominique Robinson-Ward; Liz Cervantes; Isa Woods; Darla Huttinger; Edna Tavera; Stacy Cohen; Wes Gassert; and Does 1-50.

United States District Court
Northern District of California

Support of JSC's Motion to Dismiss FAC ("Repl.") [Dkt. No. 100].

## LEGAL STANDARD

**12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

***In Forma Pauperis* Screening**

When a district court grants in forma pauperis status, the court must screen the complaint and dismiss the action if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000) (screening requirement of § 1915(e) applies to all in forma pauperis complaints). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). As such, the complaint must allege facts that plausibly establish each defendant's

liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the plaintiff." *Watison*, 668 F.3d at 1112 (citation omitted). The court must also "construe a pro se plaintiff's pleadings liberally and afford the petitioner the benefit of any doubt." Id. (citation modified). But the court "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976F.2d 469, 471 (9th Cir. 1992), *as amended* (Oct. 9, 1992).

**DISCUSSION**

This is now the fourth time I have screened Wallace's complaint. He has been given numerous opportunities to amend, each being unsuccessful. His complaints ignore my previous orders, including adding already-dismissed defendants or introducing claims after I instructed him not to. On the one hand, if the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), *overruled on other grounds*, *Singleton v. Gates*, No. 25-743, 2026 WL 1494029 (9th Cir. May 28, 2026). On the other hand, courts routinely deny such leave where plaintiffs have had multiple opportunities to cure deficiencies in their complaint but have failed to do so, rendering further amendment futile. *See, e.g.*, *Kamath v. United States Dept. of Homeland Sec.*, No. 3:23-cv-03531-JSC, 2024 WL 2818258, at *2 (N.D. Cal. June 3, 2024) (Corley, J.) ("As the Court previously provided Plaintiff the opportunity to cure the pleading defects and she did not do so . . . further leave to amend would be futile."); *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.") (quotation omitted).

The FAC is deficient, both on initial § 1915(e)(2) screening and upon considering JSC's motion to dismiss. While I am well within my authority to dismiss his complaint with prejudice,

United States District Court
Northern District of California

given the numerous opportunities for him to amend (as described in the Procedural History section above), I will provide one more opportunity for Wallace to file a complaint that meets the requisite pleading standards. I identify the issues below that Wallace must address. He must follow my requests completely. I will not provide another chance to amend.

## I. INDIVIDUAL DEFENDANTS

Wallace has named roughly twenty individual defendants. Many of them have previously been dismissed. Jan. 21 Minute Order at 2. Despite that, Wallace continues to pursue claims against them. I now dismiss every person that Wallace has named. To the extent that he has ever included any factual allegations about any of them, it is clear that they were simply acting within the course and scope of their employment. If Wallace's causes of action prove to be meritorious, then the individuals' employers would be liable to provide complete relief. I will not require that the individuals be served, which would have no purpose other than harassment, burden, inefficiency and expense. They are each dismissed and shall not be named in any further complaint.

## II. CORPORATE DEFENDANTS

Although Wallace names numerous corporate defendants, it appears that there conceivably are only two against which he has a plausible claim—JSC and RG. But because of his collective use of the "Defendants," his causes of action are unclear with respect to which defendant he contends did what act that was illegal. Wallace indicates that any reference to "defendants" refers to "the collective conduct of the corporate Defendants to the extent they acted jointly or exercised shared authority over housing eligibility determinations, waiting list administration, application processing, and accommodation requests." FAC ¶ 42. It is impossible to parse through the FAC and determine *who* is liable for *what* when Wallace pleads collectively. Each of the corporate defendants other than JSC and RG is DISMISSED and may not be re-named as a defendant. Should Wallace file a Fifth Amended Complaint, he is instructed to focus only on allegations against JSC and RG and to explain why he thinks each is liable for his ADA and/or Fair Housing Act claims.

## III. NO NEW CLAIMS

In my order dismissing Wallace's Third Amended Complaint, I indicated that Wallace must "file an amended complaint addressing the deficiencies identified [in the order], but not to add new claims or parties." Dkt. No. 89 at 10. Wallace nonetheless added two new causes of action in the FAC, including violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count III), and HUD Regulations and Handbook Violations (Count IV). This exceeds the scope of the leave granted in my prior order, and those claims are DISMISSED.

"When a court grants leave to amend for a specific purpose, courts routinely confine amendment to that purpose and decline to entertain new claims, new parties, or materially different theories introduced without authorization." *Clemmens v. Am. Honda Motor Co., Inc.*, No. 2:24-cv-09728-ODW (SKx), ---- F. Supp. 3d ----, 2026 WL 765426, at *3 (C.D. Cal. Mar. 18, 2026). My order explicitly stated that no new claims may be added. I ordered that because of the numerous opportunities I previously provided Wallace to amend his complaint. No new claims are allowed. JSC's motion to dismiss is GRANTED as to Counts III and IV. Wallace is instructed not to reraise these claims in his Fifth Amended Complaint and to focus *only* on his Fair Housing Act and ADA claims, as described below.

## IV. STATUTE OF LIMITATIONS/FAILURE TO STATE A CLAIM

JSC moves to dismiss Counts I and II of the FAC—which allege violations of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA")—as being barred by their respective statutes of limitations. FAC ¶¶ 153–62 (FHA); *id.* ¶¶ 163–68 (ADA); *see* 42 U.S.C. § 3601 *et seq.*; 42 U.S.C. § 12101 *et seq.* The continuing violation theory that Wallace relies on is inapplicable. If he amends his complaint, he must focus his claims on what happened on or after May 23, 2022, for his ADA claims and May 23, 2023, for his Fair Housing Act claim.

### A. Count I – Fair Housing Act

The Fair Housing Act ("FHA") sets a two-year statute of limitations for private individuals filing a civil action. 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . ."). The Supreme Court has

United States District Court
Northern District of California

clarified, however, that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). "Congress has since codified this continuing violation doctrine by amending the FHA to include both 'the occurrence [and] *the termination* of an alleged discriminatory housing practice' as events triggering the two-year statute of limitations." *Garcia v. Brockway*, 526 F.3d 456, 462 (citing 42 U.S.C. § 3613(a)(1)(A) (emphasis added)).

Wallace initially filed his complaint on May 23, 2025. *See* Dkt. No. 1. Accordingly, any claims regarding conduct prior to May 23, 2023—including Wallace's initial filing of a housing application at Redwood Gardens in 2019—would be barred by the statute of limitations. Wallace argues that the continuing violation doctrine applies. He specifically believes the FAC contains the following allegations that cure the potential statute of limitations concerns:

- Continuing maintenance and use of allegedly inaccurate records;
- Continuing refusal to restore waiting-list status;
- Continuing refusal to correct eligibility determinations;
- Continuing failures to engage in the interactive process;
- Continuing failures to accommodate disabilities;
- Continuing communications concerning Plaintiff's eligibility; and
- Continuing interference with Plaintiff's efforts to obtain housing.

Oppo. at 5. Moreover, Wallace maintains that the alleged conduct "presents factual questions that should not be resolved on a Rule 12(b)(6) motion," concluding that dismissal is improper. *Id.*

JSC points to the Ninth Circuit's decision in *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008). Mot. at 6–7; Repl. at 4. *Garcia* involved two plaintiffs' FHA challenges on a design-and-construction violation and whether their claims were properly brought under the statute of limitations. 526 F.3d at 459–60. The court ultimately rejected plaintiffs' theory for extending the statute of limitations period, noting that they "confuse[d] a continuing violation with the continuing effects of a past violation." *Id.* at 462. "Put differently," the court noted, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981). Because

"current effects alone cannot breathe life into prior, unchanged discrimination," the court concluded that the continuing violations doctrine did not apply in the case. *Id.* That case applies here, and as JSC argues, any conduct pre-2023 is barred by the statute of limitations for this claim.

Wallace has pleaded, however, that he filed a renewed application for a one-bedroom apartment on February 7, 2025, after management confirmed that Wallace would be "reinstated to the one-bedroom waiting list under HUD reinstatement procedures." *See* FAC ¶¶ 57, 62. Defendants allegedly "ceased meaningful communication with [Wallace] around April 2025 until after the 120-day application period had substantially expired in or about July 2025, thereby impairing Plaintiff's equal access to Defendants['] federally assisted housing program." *Id.* ¶ 175. While it is unclear which defendant Wallace thinks is liable and why, the date of the application falls within the statute of limitations and may constitute a basis to pursue rights under the Fair Housing Act. At present, however, many of his Fair Housing Act allegations are conclusory, such as that "Defendants discriminated against [him] in the terms, conditions, and privileges of rental housing because of disability," or that he was treated "differently from similarly situated applicants." *Id.* ¶¶ 154–55. Should he seek to amend his complaint, he must be more specific and focus on the facts supporting his claim against each defendant. To state a plausible claim, he must allege facts that answer questions like: How did defendants discriminate against him? Who discriminated against him—JSC or RG or both? In what ways was he treated differently from other applicants? JSC's motion to dismiss is GRANTED.

**B. Count II – Americans with Disabilities Act**

Count II of the FAC alleges violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* "Title II of the ADA [does not] contain an express statute of limitations." *Lane v. Lake Cnty. Housing Comm'n*, 724 F. Supp. 3d 1026, 1037 (N.D. Cal. 2024) (Breyer, J.). "In the absence of a federal statute of limitations, federal courts 'borrow the statute of limitations applicable to the most analogous state-law claim.'" *Id.* (quoting *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015)). For Title II claims, the Ninth Circuit has recognized that "California Government Code § 11135 . . . is the nearly identical state-law counterpart to Title II that expressly incorporates Title II's protections," and thus establishes a three-year statute of

limitations for such claims. *Sharkey*, 778 F.3d at 770.

In my prior order dismissing the TAC, I noted that Wallace did "not provide any information" concerning *when* he made "written and verbal ADA accommodation requests for assistance with communication by email, and verification tracking, and his cognitive, memory and other disabilities," as well as when defendants "ignored [the request] and failed to engage in an interactive process to accommodate [his] disabilities." TAC Order at 5. Wallace now claims that the FAC "alleges accommodation requests, communications, and alleged failures to accommodate . . . beginning no later than 2020 and continuing through 2025." Oppo. at 5–6. Focusing on his allegations of conduct within the statute of limitations, he says that on April 23, 2025, he "emailed housing management . . . formally identifying six disabilities and requesting reasonable accommodations and compliance with federal disability and fair housing requirements." FAC ¶ 41. Despite this, defendants "failed to engage in the interactive process" and discriminated against him on the basis of disability. *Id.* ¶¶ 93, 100.

These allegations are conclusory. "[T]o state a claim under either Title II or Title III of the ADA, a plaintiff must plead and prove the defendant denied her services or accommodations *because of* her disability." *Tapia v. Moughamian*, No. 19-cv-06899SBA, 2020 WL 5645332, at *3 (N.D. Cal. Sept. 22, 2020) (Armstrong, J.) (emphasis in original) (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2022); *Arizona v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2020)). Should Wallace amend his complaint, he must be more specific with his allegations: What accommodations did he request? From whom? Did JSC acknowledge and/or deny his request? How did JSC's actions constitute discrimination under the ADA? JSC's motion to dismiss the ADA claim is GRANTED.

## CONCLUSION

For the reasons set forth above, JSC's motion to dismiss is GRANTED. Wallace may file a Fifth Amended Complaint but must focus on the issues identified above: two claims, two corporate defendants, specific facts within the statute of limitations that justify the claims alleged. The Fifth Amended Complaint must be filed by **September 28, 2026**. I will screen it and if it states a colorable claim against Redwood Gardens, I will order that it be served. If it states a

colorable claim against JSC, I will require a responsive pleading or motion within 30 days of that screening order. Once the pleadings are set, I will allow 90 days for discovery and set a trial date.

**IT IS SO ORDERED.**

Dated: August 26, 2026

William H. Orrick
United States District Judge